[Civil No. 2250.  Filed December 29, 1923.]

[221 Pac. 549.]

ROBERT McMURCHIE, as County Attorney of Yavapai County, Arizona, and Personally, Plaintiff, v. THE SUPERIOR COURT OF YAVAPAI COUNTY, STATE OF ARIZONA, and JOHN J. SWEENEY, Judge of Said Superior Court, Defendants.

1. ATTORNEY AND CLIENT—STATUTE SUSPENDING ATTORNEY'S LICENSE, AFTER FILING OF CHARGES AGAINST HIM PENDING FINAL DETERMINATION OF DISBARMENT PROCEEDINGS, HELD INVALID.—Civil

---

1. Constitutionality of statutes relating to disbarment of attorneys, see note in 44 L. R. A. (N. S.) 1195.
   See 6 C. J. 602; 26 Cyc. 157, 158, 168, 173, 181, 182.

Code of 1913, paragraph 274, as amended by Laws of 1919, chapter 158, providing that the right of an attorney to practice after the filing of a disbarment complaint against him shall be suspended until the question of disbarment is determined finally is invalid, in so far as it deprives an attorney of the license to practice, without judgment of a court entered after due notice and inquiry and opportunity to be heard.

2. Mandamus — Writ Held Improvidently Granted in Directing Dismissal of Complaint in Disbarment Proceedings.—Where the question, on *mandamus*, of the superior court's jurisdiction to proceed in disbarment proceedings upon a complaint filed by persons other than the one named in Civil Code of 1913, paragraph 274, as amended by Laws of 1919, chapter 158, had never been formally presented and could not have been passed upon, the mandate from the appellate court to defendant court and judge thereof, directing them to dismiss the complaint for lack of jurisdiction or show cause, was improvidently granted.

3. Mandamus — Compulsion not Applied Until Opportunity to Act and Refusal to Do so.—There must have been an opportunity to act and a refusal to do so, before force or compulsion can be applied or exerted.

4. Mandamus—On Refusal to Do Plain Duty, Mandamus will Lie as Well as to Require Exercise of Discretion.—If a duty enjoined is plain, and the officer or tribunal refuses to act at all when called upon to do so in regular procedure, action may be compelled, or, if the officer or tribunal has a discretion in the performance of a legal duty, such discretion will not be controlled, but its exercise will be required as in disbarment proceedings, under Civil Code of 1913, paragraph 274, as amended by Laws of 1919, chapter 158.

5. Mandamus — Not Proper Where Remedy by Appeal or Other Proceeding.—Mandamus is not a proper remedy, where the question raised may be reviewed by appeal or by other proper proceeding.

6. Mandamus—Statutory Methods Other Than Mandamus Lie to Review Court's Ruling on Sufficiency of Complaint in Disbarment Proceedings.—If in disbarment proceedings in the superior court, under Civil Code of 1913, paragraph 274, as amended by Laws of 1919, chapter 158, either party is dissatisfied with the ruling on the sufficiency of the complaint filed by persons other than the one named in the statute, as raised by motion, plea, demurrer or answer, the statutes provide other methods than *mandamus* to secure a review of the court's rulings.

Original proceedings in *mandamus.* Order that · peremptory writ of *mandamus* issue.

Messrs. O'Sullivan & Morgan, for Plaintiff.

Mr. LeRoy Anderson, Mr. A. H. Favour and Mr. John A. Ellis, for Defendants.

LYMAN, J.—Chapter 158 (page 265) of the Acts of the Regular Session of the Fourth Legislature (1919) provides for the disbarment of attorneys, and for the procedure which may be followed for that purpose, amending paragraphs 271 to 277, both inclusive, of the Revised Statutes of Arizona 1913 (Civil Code). It is made the duty of the court to appoint a committee to investigate any improper conduct on the part of any attorney of which the court has notice. The report of such committee, with the recommendation that complaint be filed, makes it mandatory upon the court to direct the county attorney to file charges against the attorney accused, who thereupon, without further order or proceeding, becomes suspended from the practice of his profession pending the trial and ultimate judgment upon such charges.

This is a petition for a writ of *mandamus,* filed originally in this court, for the purpose of reviewing proceedings had by the superior court of Yavapai county, under the provisions of that statute. The petitioner, Robert McMurchie, alleges that, upon filing of complaint against him in that court, affecting his conduct as an attorney, the judge of that court, the Honorable JOHN J. SWEENEY, giving effect to the express directions of the statute, declined thereafter to recognize McMurchie, who was then county attorney as an attorney of that court, and declined to permit him to proceed in the prosecution of criminal actions. That portion of the act in question bearing directly upon this matter is as follows:

"274. Such action or proceedings shall be commenced by a complaint in writing and which said

complaint shall also state that the proceedings are instituted under order of the superior court. Said complaint need not be sworn to but shall be brought in the name of the state of Arizona and shall be filed with the clerk of the court and summons shall be issued by the clerk directed to such accused attorney ordering him to show cause at a day and hour named in said summons, and which said day shall not be less than ten nor more than thirty days from the issuance and service of said summons, requiring the said attorney to show cause why his license to practice law should not be suspended or revoked. Provided, that the summons shall be served upon the defendant at least five days before the trial day and provided further that from and after the date of the filing of complaint by the county attorney as hereinbefore provided, the right of such accused attorney to practice in any of the courts in the state of Arizona shall be suspended until hearing and trial thereon and final determination and judgment taken thereon.''

It will be observed that the consequence of suspension from practice visited upon the accused attorney is not based upon any judicial finding or sanction. The report of the preliminary investigation, has, it is true, been submitted to the court; but the action taken by the court in directing a complaint to be filed is not based upon the judgment of the court, but the mandate of the statute, which requires such complaint to be filed whenever the investigating committee recommends that it be done. In effect, the legislature has said that whenever an investigating committee recommends the filing of a complaint, and that complaint is filed, then and thereupon the accused attorney stands suspended. His suspension is not based upon any judgment or finding of the court, and is without trial or notice to the accused. It is a legislative decree, by which the mere filing of accusations against an attorney operates automatically to suspend him from practice without hearing or judg-

ment.   This is contrary to one of the cardinal prin-
ciples of the administration of justice, that no man
can be condemned or divested of his rights until he
has had the opportunity of being heard.   *Ex parte
Heyfron,* 7 How. (Miss.) 127; *People* v. *Turner,* 1
Cal. 143, 52 Am. Dec. 295.

The license which an attorney holds to practice his
profession is not a mere indulgence, revocable at the
pleasure of the court, but it is a right with which he
has been invested, to hold during good behavior, and
cannot be lightly or capriciously taken from him.   It
is acquired by order and judgment of a court, after
examination into his moral and intellectual qualifica-
tions.   He can only be divested of that right by a like
judgment of court, entered after due notice and in-
quiry and opportunity to be heard, and based upon
some conduct on his part which makes him unworthy
further to engage in the practice of law.

In *Ex parte Garland,* 4 Wall. 333, 18 L. Ed. 366
(see, also, Rose's U. S. Notes), the Supreme Court
of the United States had under consideration an act
of Congress which made certain conduct of attorneys
operate to deprive them of the right to practice their
profession unless they should first purge themselves
of such disability by an oath.   It was held by that
court that an attorney at law could not be deprived
of his right to follow his profession by means of such
legislation alone, and among other things had this to
say:

"They hold their office during good behavior and
can only be deprived of it for misconduct ascertained
and declared by the judgment of the court after op-
portunity to be heard has been afforded.   Their ad-
mission or their exclusion is not the exercise of a
mere ministerial power.   It is the exercise of judi-
cial power."

Upon this point the precedents are very numerous
and uniform.   *Tomsky* v. *Superior Court of City and*

*County of San Francisco,* 131 Cal. 620, 63 Pac. 1020; *Randall* v. *Brigham,* 7 Wall. 523, 19 L. Ed. 285; *Ex parte Bradley,* 7 Wall. 364, 19 L. Ed. 214.

The statute makes it the duty of the county attorney to file a complaint against the accused attorney when directed so to do by the court. In this instance the court, deeming it useless to direct the county attorney McMurchie to file complaint against himself, directed the complaint to be filed by two members of the committee who had investigated the charges. This failure to follow the strict letter of the statute is made the basis of an objection to the jurisdiction of the court, assuming that the right of the court to act depended solely upon the authority expressed in this statute, and that the direction of the statute must be specifically and literally carried out. The learned judge of the superior court was undoubtedly right in not asking or expecting the county attorney to file charges against himself. The statute seems to have provided for just such contingency. In paragraph 275 will be found this provision:

"The cause shall be conducted in the name of the state of Arizona against the defendant and the state shall be represented by the county attorney provided that the committee so theretofore appointed, or any member thereof, shall be entitled to assist and take part in the preparation and trial of the case, and the court may appoint additional counsel from among the members of the bar of said county to assist the county attorney in such prosecutions."

The statute itself seems to contain ample authority, expressed with a reasonable certainty, for the course pursued.

The statutes are to be construed in accordance with the intent of the legislature, so far as such intent is manifested by the express terms in which the statute is couched, and which does not do violence to the terms in which the legislature has phrased its intent.

Statutes will always be construed, if possible, so that they shall conform to constitutional limitations, and shall work no absurdity or substantial injustice. We should be reluctant, therefore, in presuming that the legislature, in providing a means for regulating the practice of law, deliberately and purposely exempted from the operation of such statute a whole class of attorneys, considerable in number and conspicuous in character, and especially where no possible reason can be discerned for such exclusion. Yet such is the effect of the construction which we are urged to place upon this statute. No reason can be found, and none has been suggested, for relieving county attorneys from those restraints dictated by good morals, and required for the successful and orderly administration of justice, which courts from time immemorial have exercised. We are not willing to assume that the legislature regarded county attorneys as superior to the frailties common to human nature, or that they should be placed beyond and above the courts in which they practice.

The assumption that the court's jurisdiction is limited to the express provisions of this statute is based upon totally false premises. All courts exercising general and common-law jurisdiction possess the inherent right to require lawyers practicing at their bar to so conduct themselves that they shall neither bring reproach upon their profession nor in any way impede the due administration of justice. This is a right not derived from statute, nor held at the will of the legislature. It is essential to the orderly administration of justice.

The procedure authorized by this statute is not in terms nor by implication exclusive. It provides, and assumes only to provide for an orderly procedure for carrying into effect powers and the exercise of a jurisdiction already possessed by the courts. Nor does it assume that the prescribed method of procedure shall

be exclusive.  All statutes dealing with the exercise
of common-law powers are to be strictly construed,
and it will not be presumed that the legislature in-
tended a repeal of the common law beyond the ex-
press terms and letter of its enactment.  *State* v.
*Kirke,* 12 Fla. 278, 95 Am. Dec. 314; *In the Matter
of Mills,* 1 Mich. 392.

In *Ex parte Bradley,* 7 Wall. 364, 19 L. Ed. 214
(see, also, Rose's U. S. Notes), the opinion is the
more directly in point because it considered a question
as to whether or not a court having no power of ad-
mitting attorneys to practice, might nevertheless ex-
ercise the power of disbarment from practice in that
court.  A like question was also decided in the case
of *State* v. *Kirke,* above cited.

The courts are a co-ordinate branch of the govern-
ment.  Attorneys are officers of the court, and they
are at all times accountable to the court for the man-
ner in which they exercise the right and privilege of
practicing their profession, and it may at any time
declare such right forfeited for misconduct, whether
professional or nonprofessional, which indicates an
unfitness of the attorney to manage the business of
others in the capacity of an attorney.  *In re Durant,*
80 Conn. 140, 10 Ann. Cas. 539, 67 Atl. 497.  And
courts have not hesitated to exercise this jurisdiction,
even when contrary to the express terms of the stat-
ute.  *State Bar Commission ex rel. Williams* v. *Sulli-
van,* 35 Okl. 745, L. R. A. 1915D, 1218, 131 Pac. 703;
*Re Day,* 181 Ill. 73, 50 L. R. A. 519, 54 N. E. 646; *In
re Garland,* 4 Wall. 333, 18 L. Ed. 366.

"The right to remove attorneys for misconduct,
being necessarily incident to all common-law courts of
general jurisdiction, is not derived from the legisla-
ture.  Where there is a statute on the subject, courts
may disbar for causes not specified in the statute,
which is not to be construed as an enabling act, nor
as restricting the general power of the court over its
officers.  *In re Mills,* 1 Mich. 392; *Beene* v. *The State,*

22 Ark. 149; *Jackson* v. *The State,* 21 Tex. 668; *In re Bowman,* 7 Mo. App. 569; 8 Cent. L. J. 250.'' *State ex rel.* v. *Laughlin,* 10 Mo. App. 1; *State Bar Commission ex rel. Williams* v. *Sullivan,* 35 Okl. 745, L. R. A. 1915D, 1218, 131 Pac. 703; *Ex parte Smith,* 28 Ind. 47; *People* v. *Amos,* 246 Ill. 299, 138 Am. St. Rep. 239, 92 N. E. 857.

It is also urged as a fatal infirmity in these proceedings that, unless the complaint is made by the county attorney in his official capacity, it is insufficient, because unverified, to form the basis of any inquiry or valid judgment, and this contention would be well founded if the complaint were the voluntary act of an aggrieved person or some interloper, whose acts might be open to suspicion of malice or selfish interest. These proceedings are designed in the spirit of the utmost caution and fairness, requiring that a committee of counsel who have been appointed by the court, and who have taken an oath of office to perform their duties fairly and impartially, shall first have fully investigated the charge. Whatever complaint is presented to the court, whether by the county attorney or by counsel appointed by the court for that purpose, is based upon the report of such committee. The substantial rights of the accused seem no less safeguarded by a complaint made by counsel appointed for that purpose than by complaint filed by the county attorney.

It seems to have been the practice in the state of Colorado, at one time, though not authorized by statute, for the bar association, an incorporated body, through a grievance committee, to examine into charges which might be preferred against attorneys. If the results of such examination seem to justify it in the opinion of the association, report was made to the Supreme Court. If that court was of the opinion that a judicial investigation should be had, the matter was referred to the Attorney General, with instruc-

tions to embody the charges in an information, and present the same to the court. In the case of *People ex rel. Colorado Bar Assn.* v. *Mead,* 29 Colo. 344, 68 Pac. 241, objections were made to this procedure upon the ground that no attorney should be called upon to defend himself against unverified charges. The opinion of the court in that case admitted that the better rule was to have charges in such cases verified. But upon the reasoning that the prosecution was commenced at the instance of the bar association, and prosecuted by the Attorney General under the direction of the court, there were sufficient safeguards against reckless and groundless charges where, as in that case, "the respondent must be duly notified and given full opportunity to defend the charges."

A somewhat similar situation was presented to the court in *Re Evans,* 94 S. C. 414, 78 S. E. 227, where an unverified petition was presented to the court by the Attorney General, apparently not at the instance of any committee or bar association. Concerning the rule that a complaint in such an instance should be verified, the court says:

"The rule may, with entire propriety, be departed from, when it appears that the charges are made by a bar association or by the Attorney General in his official capacity, and that the charges are grave and require investigation in the public interest or in vindication of the accused."

The Supreme Court of the United States in *Ex parte Wall,* 107 U. S. 265, 27 L. Ed. 552, 2 Sup. Ct. Rep. 569 (see, also, Rose's U. S. Notes), declined to interfere by *mandamus* with a judgment of disbarment by the district court, based upon an unverified complaint, citing *Ex parte Steinman and Hensel,* 95 Pa. 220, 40 Am. Rep. 637, in which Chief Justice SHARSWOOD said:

"We entertain no doubt that a court has jurisdiction without any formal complaint or petition upon

its own motion to strike the name of an attorney from the roll in a proper case, provided he has had reasonable notice and been afforded an opportunity to be heard in his own defense,''

—and citing also a still earlier case of that court, *Randall* v. *Brigham,* 7 Wall. 523, 19 L. Ed. 285.

It cannot be said that the proceedings complained of here do not afford sufficient safeguard against a malicious and unfounded attack.

For the reasons stated in this opinion, it is ordered that a peremptory writ of *mandamus* issue for the purpose only of requiring the superior court of Yavapai county and its judge pending a final determination of said disbarment proceedings, to recognize the petitioner as an attorney of that court, both in his private and official capacity; but for all other purposes the writ is denied, without costs to either party.

ROSS, J.—I concur entirely with my learned colleague in the holding that the legislative suspension of Attorney McMurchie's license to practice and to perform the duties of county attorney is violative of one of the fundamental principles of our laws and therefore ineffective. I think the alternative writ to the defendants in this proceeding should be made peremptory as to that matter.

I do not, however, think it necessary or proper at this time to pass upon the sufficiency of the accusatory complaint of disbarment, for the reason that at the time the alternative writ was issued the questions of the sufficiency of the complaint and the jurisdiction of the court had not been raised or passed upon by the superior court or the judge thereof, defendants in this proceeding. The question of the court's jurisdiction to proceed in the disbarment proceeding upon a complaint filed by persons other than the one named in the statute had never been formally presented, and of course could not have been passed

upon; therefore the mandate from this court to the defendants directing them to dismiss the complaint for lack of jurisdiction or show cause, was improvidently granted, and an all-sufficient answer to such a command would be that the defendant court and judge had not passed upon the question, as it had not theretofore been put in issue or presented to the court for decision. Even though what this court commanded to be done was "an act which the law specially enjoins as a duty resulting from the office" of the superior judge, still this court plainly under all the law had no right to compel its performance until defendants had an opportunity to act and had failed to discharge such duty. No rule of human conduct is better settled, whether it be in connection with private or a public and official duty, than that there must have been an opportunity to act and a refusal, before force or compulsion can be applied or exerted. If the duty enjoined be plain, and the officer or tribunal refuse to act at all when called upon to do so in regular procedure, action may be compelled, or, if the officer or tribunal has a discretion in the performance of a legal duty, such discretion will not be controlled, but its exercise will be required in this kind of proceeding.

It is also well settled that *mandamus* is not a proper remedy, where the question raised may be reviewed by appeal or other proper proceeding. If when the matter comes on to be heard in the superior court the sufficiency of the complaint in the disbarment proceeding is raised by motion, plea, demurrer or answer, and either party is dissatisfied with the court's ruling thereon, we have no doubt there exist under our statute other methods of securing a review of the court's rulings. Until the lower court has had an opportunity and has acted upon these questions, and the aggrieved party has presented the matter to this court in a proper way, I am of the opinion that

this court should withhold the expression of any views thereon.

For this reason I express no opinion as to the propriety or legality of the court's action in accepting a complaint brought by other persons than the official mentioned in the statute, or the power of the court to adopt a procedure, different from that authorized by the statute.

McALISTER, C. J.—I concur in the order directing the issuance of a peremptory writ of *mandamus,* requiring the superior court of Yavapai county to recognize the petitioner in his capacity as county attorney and as a private practitioner, for the reasons stated by Justice LYMAN, namely, that chapter 158 of the Session Laws of 1919, upon which the court acted in refusing to recognize him as county attorney, is ineffective in so far as it provides that the right of an attorney to practice after the filing of a disbarment complaint against him shall be suspended until the matter is determined finally. An attorney cannot be deprived of such right except by judgment of the court duly entered after a full hearing, but to hold this part of that chapter valid takes these rights from him by legislative decree, without any order of the court and before a hearing of any kind in which he was permitted to appear, and the fact that the deprivation of this right may be only temporary does not render this phase of the law valid.

I likewise concur in the order denying the writ in so far as its issuance is sought for the purpose of directing a dismissal of the proceeding in the superior court, but do so for the reason assigned by Justice ROSS in his concurring opinion. When this court ordered the issuance of the alternative writ, no motion, demurrer, plea or answer of any character had been filed by the defendant McMurchie in the disbarment proceeding, and the superior court had never

acted or passed upon the sufficiency of the complaint therein, and could not have done so, because no opportunity had been given by a challenge thereto. "There must always be a previous request to act, and a definite, unqualified refusal, before the writ will issue." 26 Cyc. 193. The mere fact that the court ordered the complaint filed by persons other than the one upon whom chapter 158 enjoins this duty does not mean that it has passed upon even this phase of the question, because in the nature of things the accused had no opportunity to be heard when this *ex parte* order was made, and it would not be presumed that the court would not thereafter pass upon it if it were properly presented by demurrer, motion, plea, or other proceeding. But if it be conceded that such order constituted action by the court, the correctness of the ruling should be reviewed on appeal and not in a *mandamus* proceeding.

It occurs to me, therefore, that a discussion of the sufficiency of the complaint, in so far as the persons filing it or the absence of verification is concerned, or in so far as the contention that the court has power to disbar aside from the provisions of the statute affects it, is unnecessary and improper in this proceeding, and for this reason I withhold the expression of an opinion on these questions.