Bennie VEREEN, Appellant,

v.

UNITED STATES, Appellee.

No. 89–460.

District of Columbia Court of Appeals.

Argued Dec. 6, 1990.
Decided March 5, 1991.

Richard Seligman, Washington, D.C., appointed by this court, for appellant.

Richard L. Chamovitz, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and Steven J. Roman, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, BELSON, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

Appellant Bennie Vereen appeals from his conviction of armed robbery, D.C.Code §§ 22–2901, –3202 (1989 Repl. & 1990 Supp.), on the grounds that the trial judge (1) erroneously determined that a rebuttal witness for the government was competent to testify and (2) erred in denying the defense an opportunity to present psychiatric testimony to negate the credibility of the rebuttal witness. Under the unusual circumstances here, we agree that the trial judge erred in submitting the witness to the jury while denying the defense access to the witness's medical records during *voir dire* and without the benefit of expert opinion to aid in determining the witness's competency. Accordingly, we reverse.[1]

---

1. In view of our disposition we do not reach appellant's other claims that (1) the prosecutor misrepresented the nature of the witness's mental health which resulted in a denial of due process, (2) the trial court erred in refusing to admit into evidence a police report containing a prior inconsistent identification made by a complaining witness, and (3) the prosecutor improperly questioned the veracity of witnesses and improperly suggested that Vereen's presence in the store on the day of his arrest was incriminating.

Police officers responded to a call from a cashier at a convenience store. The cashier recognized appellant Vereen in the store as the man who had participated in a robbery at the store several weeks earlier. The officers apprehended Vereen on a street in the surrounding neighborhood and returned him to the store where the cashier identified him as the armed robber.

Prior to the trial, there was discussion between counsel and the judge regarding the competency of a potential witness, appellant's girlfriend. The government indicated it did not intend to call her as part of its case-in-chief, but might call her as a rebuttal witness.[2] In the course of trial, appellant denied involvement in the offense and stated he was with his girlfriend at the time of the robbery. At the close of the evidence for the defense, the government announced its intention to call, as a rebuttal witness, the woman whom appellant had mentioned in his testimony. After a hearing, the judge ruled the witness was competent to testify. In her testimony, the witness related that Vereen had asked her to confirm that he was with her at the time of the robbery, but that she had refused because it was untrue. She also testified that he had admitted to her that he had participated in the robbery.

Thus, we turn to what we perceive as appellant's primary assertion of error. He contends that the trial judge erred in concluding that the rebuttal witness was competent to testify, and compounded that error by declining defense counsel's request for an opportunity to introduce expert psychiatric testimony to the jury bearing on the credibility of the witness.

■ In reviewing the circumstances of this case, there is little dispute as to the pertinent principles which govern. In assessing the competency of a witness, a trial judge must evaluate the ability to accurately perceive, recall, and relate purported facts, as well as testify truthfully. *Hilton v. United States*, 435 A.2d 383, 387 (D.C. 1981). A trial judge has broad discretion, *Rogers v. United States*, 419 A.2d 977, 980 (D.C.1980), and a ruling in this regard should not be disturbed unless plainly deficient. *Collins v. United States*, 491 A.2d 480, 484 (D.C.1985).

■ When the question arose in this instance, medical records, in the prosecutor's possession, were made available to the judge, but not the defense. The judge, sensitive to important privacy concerns[3] reviewed the records, *in camera*, and thereafter conducted a *voir dire* examination of the witness outside the jury's presence.

■ The medical records revealed that the witness had been diagnosed as schizophrenic and had been prescribed medication, which she was currently taking. There was an indication in the records, and the witness freely acknowledged, that she presently had premonitions and saw "vapors"—fluorescent auras—that appeared over peoples' heads. She stated that these conditions had existed for most of her life. Significantly, she related that she had seen "vapors" on the morning of trial and had experienced a premonition two nights earlier. We also note that she answered questions coherently and was functioning as a student and in her employment. After a finding of competency, the witness was permitted to testify before the jury. It was only at the close of direct-examination before the jurors that the defense received copies of the medical records and was allowed cross-examination on the basis of those records.

Our concern centers around a circumstance which, so far as we are aware, is fairly unique. Although the witness was apparently rational and appeared normal in

---

**2.** When this question was raised prior to trial, the judge chose not to resolve it at that time because it was unclear that the woman would in fact appear as a witness.

**3.** A presumption exists against subjecting witnesses to psychiatric examinations. *Collins v. United States, supra,* 491 A.2d at 484. Prior decisions of this court have not concluded that trial judges erred in failing to order examinations for witnesses with histories of psychiatric treatment. *See, e.g., Hilton v. United States, supra; Albany v. United States,* 377 A.2d 1145 (D.C.1977). Our opinion should not be construed otherwise.

responding to questions during the *voir dire* procedure, the judge was confronted with a witness who had a history of mental disorders, who had recently undergone psychiatric examination, and who, on the day of trial, was experiencing unusual symptoms. Without the benefit of an expert's evaluation at the *voir dire* stage, the trial judge was ill-equipped to determine whether the "vapors," premonitions, and any other irregularities were harmless aberrations or might, in some way, bear on her perception, recollection, or ability to distinguish fact from unreality.

Because the defense did not obtain the medical records until after the competency ruling, and after direct-examination of the witness at trial, it sought, unsuccessfully, to call an expert witness at trial as a means of attacking her credibility. Although competency and credibility are related, the former concerns certain basic, prerequisite capabilities necessary to give testimony, whereas the latter is largely a concern of the factfinders—to decide whom and what to believe. The pivotal question in this case was plainly one of competency. Normally, we do not anticipate that a challenge to competency will require a psychiatric examination or testimony from a psychiatrist.[4] However, in the unusual circumstances of this case—where the witness was currently experiencing mental irregularities—the effort to evaluate her competency was certainly more difficult. Recognizing that the witness appeared outwardly rational, the remaining concern was whether the "vapors" and premonitions had any substantial latent effect on the witness' contact with reality not readily observable. On this point, it would seem that any insight which a person with training and experience in this area could offer would be useful. Such opinions need not be definitive, but where there are ongoing manifestations of mental illness, they may well assist the judge in assessing whether the

witness can distinguish the real from the imagined.

Given the procedure that evolved in this case, we conclude the judge erred in submitting the witness to the jury, while denying the defense access to the medical records during *voir dire* and without the benefit of hearing expert opinion as an aid in deciding competency. In reaching this conclusion, we take pains to state that in most cases, particularly those where there are no ongoing irregular mental perceptions at the time of the proceeding, expert testimony will be unnecessary to determine the competency of a witness.

Accordingly, we reverse the judgment on appeal and remand this case for a new trial.

*So ordered.*

---

4. In determining whether examinations are necessary, trial judges "must weigh the potential evidentiary advantage of the examination against the dangers of an unwarranted invasion of privacy posed by such examinations, *e.g.,* the

potential harassment resulting therefrom or the likelihood that the witness may be deterred from coming forward." *Hilton v. United States, supra,* 435 A.2d at 387 (footnote omitted).